UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DIANNA LYNN SWINFORD,

      Plaintiff,

      v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security

      Defendant.

NO.  CV-11-116-RHW

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

      Before the Court are Plaintiff's Motion for Summary Judgment, ECF No. 16 and Defendant's Motion for Summary Judgment, ECF No. 19. The motions were heard without oral argument. Plaintiff is represented by Jeffrey Schwab. Defendant[1] is represented by Assistant United States Attorney Pamela De Rusha and Special Assistant United States Attorney Michael S. Howard.

## I.    Jurisdiction

      On November 15, 2006, Plaintiff Dianna Lynn Swinford filed an application for supplemental security income. She alleges she has been disabled since January

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

1, 2002, due to anxiety disorder, reading disability, ADD, explosive disorder, personality disorder, and fibromyalgia. (Tr. 173.)

Her application was denied initially and again denied on reconsideration. A timely request for a hearing was made. On September 16, 2009, Plaintiff appeared at a video hearing in Wenatchee, Washington before Administrative Law Judge (ALJ) Gene Duncan, who was presiding in Spokane, Washington. Plaintiff was represented by Kathleen G. Kilcullen, an attorney. Dr. Marian Martin, a clinical psychologist, and Polly Peterson, a vocational expert, also participated.

The ALJ issued a decision on October 9, 2009, finding that Plaintiff was not disabled. Plaintiff timely requested review by the Appeals Council, which was denied March 3, 2011. The Appeals Council's denial of review makes the ALJ's decision the final decision of the Commissioner. (42 U.S.C. §405(h)). Plaintiff filed a timely appeal with the U.S. District Court for the Eastern District of Washington on March 29, 2011. The instant matter is before the district court pursuant to 42 U.S.C. § 405(g).

## II.   Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work, but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a)(4), 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2**

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. 20 C.F.R. §§ 404.1574, 416.972; *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. §§ 404.1571, 416.920(b). If he is not, the ALJ proceeds to step two.

Step 2: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. §§ 404.1520©, 416.920©. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. §§ 404.1508-09, 416.908-09. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Step 4: Does the impairment prevent the claimant from performing work she has performed in the past? 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform her previous work, she is not disabled. *Id.* If the claimant cannot perform this work, proceed to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of her age, education, and work experience? 20 C.F.R. §§ 404.1520(f), 416.920(f).

The initial burden of proof rests upon the claimant to establish a prima facie

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3**

case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. *Id*. At step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id*.

### III.    Standard of Review

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 .S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors  as long as they are immaterial to the ultimate nondisability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

### IV.    Statement of Facts

The facts have been presented in the administrative transcript and the ALJ's decision, and will only be summarized here.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4**

At the time of the hearing, Plaintiff was 40 years old. She completed the 10th grade, and has attempted on numerous times to obtain her GED, but has always failed. Plaintiff experienced an abusive childhood. Her mother was on welfare and she moved about 30 times while she was growing up. She reported she was sexually threatened, molested, and rape by her brothers, and she was also raped by her maternal grandfather. Consequently, she struggled in school.

Plaintiff testified that she has trouble reading a newspaper in that she has problems understanding and remembering the words she reads. She also reported she has trouble remembering conversations. At the hearing, she predicted she would not be able to recall the hearing once it was concluded. (Tr. 39.) The results of IQ tests indicate that she is in the low-average range. Testing also indicates her working memory is at a deficit, which means she has a deficiency in her ability manipulate auditory and visual information in short-term memory. (Tr. 239.) Her last job was at Kmart. She testified she was asked to leave because she could not perform the job to its standards.[2] (Tr. 38-39.)

Plaintiff has been receiving treatment from April Shipowick-Smith, M.A., L.M.H.C., since February, 2002. It was determined that Plaintiff was taking Seroquel, Wellbutrin, Amitriptyline for psychological issues and Lyrica for her fibromyalgia.

**V.     The ALJ's findings**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful

---

[2]In 2001, Plaintiff told Dr. Rowe that "she left the job because she developed problems with her heart and back and got depressed and then overdosed on her medicine and was treated at the Lake Chelan emergency room. (Tr. 236.) In November, 2006, she reported to Dr. Bauer, M.D., that at her last job she had difficulty remembering tasks assigned to her and she would get so frustrated she could not perform her job. (Tr. 248.)

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5**

activity since November 15, 2006, the application date. (Tr. 23.)

At step two, the ALJ found Plaintiff has the following severe impairments: major depressive disorder, anxiety, and complaints of low back pain. He specifically found the following impairments to *not* be severe: shoulder impairment, attention deficit hyperactivity disorder (ADHD), low intellectual functioning, and obesity. (Tr. 23.)

At step three, the ALJ found Plaintiff's impairments or combination of impairments did not meet or medically equal any of the listed impairments described at 20 CFR Part 404, Subpart P, Appendix 1. (20 CFR 404.1520(d), 404.1525, 404.1526, 416.925 and 416.926).  (Tr. 26.) The ALJ relied on the testimony of Dr. Martin, who indicated that Plaintiff did not have any marked restrictions or difficulties, in concluding that paragraphs B and C were not met.

The ALJ determined Plaintiff has the residual functional capacity to perform a wide range of simple routine light and sedentary level work as defined by 20 C.F.R.  § 416.967(b)[3] with limitations for only occasional postural manipulations; bending at the waist; and no exposure to unprotected heights, machinery and

---

[3](b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 416.967

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6**

vibrating equipment, no intense interaction with others, only superficial contact with coworkers and the public, and the need for written and hands-on instruction when learning new tasks. (Tr. 27.)

At step four, the ALJ found Plaintiff has no significant past relevant work experience. (Tr. 28.)

At step five, after considering Plaintiff's age, education, work experience, residual functional capacity and the testimony of Ms. Peterson, a vocational expert, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as cannery worker, potato inspector, and agriculture sorter.  (Tr. 29.) As such, Plaintiff was not disabled.

**VI.    Issues for Review**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, Plaintiff argues the ALJ: (1) failed to provide an accurate hypothetical which accurately represented the testimony of the medical expert; and (2) erred in not considering lay evidence and concurring opinions for the "B" criteria. Plaintiff asserts the ALJ should have adopted the functional imitations of Dr. Rowe[4] and Ms. Shipowick-Smith.

**VII.   Discussion**

**1.     Testimony about Plaintiff's Work Absences**

---

[4]Plaintiff did not provide a cite to the record that pinpoints Dr. Rowe's functional assessments or functional limitations. Dr. Rowe did not identify any specific functional limitations in his report. He did indicate that he believed Plaintiff had a learning disorder, NOS, because she always attended special education classes, her continued inability to pass her GED exams, and the fact that tests indicate she has low-average intellectual ability. (Tr. 240.) The RFC reflects simple routine work, which incorporates Plaintiff's low-average intellectual ability and would apply even if a specific learning disorder was supported by the record.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7**

1    Plaintiff argues the ALJ misconstrued the testimony of Dr. Martin, the
2  medical expert, and consequently presented an insufficient hypothetical to Ms.
3  Peterson, the vocational expert.

4    "In order for the testimony of the vocational expert to be considered
5  reliable, the hypothetical posed must include 'all of the claimant's functional
6  limitations, both physical and mental' supported by the record." *Thomas v.*
7  *Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002).

8    In testifying, Dr. Martin indicated she believed there would be times when
9  Plaintiff might have difficulty getting to work. (Tr. 60.) She thought that "out of a
10 month she might have some days there where she's down and more anxious or
11 whatever." (Tr. 60.) The ALJ asked her to clarify whether she meant every two or
12 three or four months. (Tr. 60.)

13   Dr. Martin explained:

14 Well you know that's where it's a little hard to say because at this
   point it looks like her mood disorder and her anxiety disorder are
15 fairly well stabilized on her medication. But then I– and so I don't
   think she would have you know, that much difficulty as long as she
16 stays stabilized on her medicine. But if there were some significant
   stress that came in to her life I don't think she'd be able to express
17 this very well. And so then that could send her into a you know, a
   more severe depression or more, or increased symptoms of anxiety
18 and she might have difficulty. And I can't, I don't know how to
   predict that because you know it depends on her stresses basically I
19 think.
20 (Tr. 60.)

21   The ALJ then included in the hypothetical presented to Ms. Peterson the
22 limitation that Plaintiff "would miss three days work consecutively every three
23 months." (Tr. 80.) Ms. Peterson concluded Plaintiff would be able to work. (Tr.
24 81.) On re-examination by Plaintiff's attorney, Ms. Peterson indicated that if an
25 employee  had three days consecutively every three months, but could work
26 without absences for the other two months, the employee would be retained. (Tr.
27 90.)

     Plaintiff argues Dr. Martin's testimony should be interpreted to mean that
28

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY**
**JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY**
**JUDGMENT ~ 8**

1    Plaintiff should be expected to miss some days out of every month. ECF No. 17 at

2    5 ("Dr. Martin testified the plaintiff could be expected to miss 'some days' 'out of

3    a month, which would commonly describe two or more days per month that the

4    plaintiff would not complete a normal workday or work week."). Plaintiff mis-

5    characterizes Dr. Martin's testimony. Dr. Martin stated that Plaintiff *might* have

6    some days which would preclude work. Such qualification indicates Dr. Martin's

7    belief that the absences would not occur every month. Moreover, the subsequent

8    paragraph demonstrates Dr. Martin was equivocal regarding specific time

9    absences and stated it would depend on Plaintiff's stresses.

10        The hypothetical posed  by the ALJ to the vocations expert is supported by

11    Dr. Martin's testimony, and the ALJ's interpretation of that testimony was

12    reasonable.  Dr. Martin did not anticipate absences because her mood disorder and

13    her anxiety disorder are fairly stabilized on medication, but she allowed the

14    possibility that at times Plaintiff *may* experience some stresses, which *may* cause

15    her to miss work. The ALJ's hypothetical reflected this possibility. The ALJ did

16    not err in presenting this limitation to the vocational expert.

17            2.    **Whether Plaintiff Meets Listing**

18        Plaintiff argues the ALJ erred in not considering April Shipowick-Smith's

19    opinion in determining whether she met the "B" criteria. Plaintiff did not identify

20    which listings she believed she met if Ms. Shipowick-Smith's testimony was

21    considered.

22        To meet a listed impairment, a claimant must show that she meets each

23    characteristic of a listed impairment relevant to her claim. To equal a listed

24    impairment, a claimant must establish symptoms, signs and laboratory findings "at

25    least in severity and duration" to the characteristics of a relevant listed

26    impairment, or if a claimant's impairment is not listed, then to the listed

27    impairment "most like" the claimant's impairment. 20 C.F.R. § 404.1526; *Tackett*

28    *v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 9**

The ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments, but did not identify any particular listing the ALJ considered. (Tr. 26.) At the hearing, Dr. Martin identified the following possible Listings: 12.02 (organic mental/brain disorders) for diagnoses of ADHD, 12.04 (affective disorders) for bipolar and depressive disorders, 12.06 (anxiety-related disorders) for generalized anxiety. (Tr. 45-46.) Dr. Martin concluded these impairments were all well-managed with medication, or determined the record did not support a diagnoses. (Tr. 46.)

Ultimately, Dr. Martin concluded that Plaintiff did not have any marked degree of limitations in activities of daily living, maintaining social function, or maintaining concentration, persistence or pace, which would have been necessary to meet any of these Listings.[5]  (Tr. 50-51.) And he noted she did not have any episodes of decompensation. (Tr. 51.)

In contrast, Ms. Shipowick-Smith completed a Psychological/Psychiatric Evaluation in 2006 where she found that Plaintiff had the following *marked* characteristics: memory defects for recent events; impoverished, slowed, perseverative thinking, with confusion or disorientation; and labile, shallow or coarse affect. (Tr. 337.) These symptoms were due to her short attention span and

_____

[5]He noted the following *moderate* limitations: ability to understand, remember and carry out detailed instructions; maintain attention/concentration for extended periods; work in coordination with or proximity to others without distraction; complete a normal workday/week without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions/responding appropriately to criticism from supervisors; get along with coworkers or peers without distraction or exhibiting behavior extremes; and respond appropriately to changes in the work setting. (Tr. 58.)

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10**

difficulty processing. (Tr. 337.) In terms of functional mental disorder, Ms. Shipowick-Smith found the following *severe* symptoms: expression of anger (verbal and/or physical), social withdrawal, paranoid behavior, and physical complaints, and the following *marked* symptoms: verbal expression of anxiety or fear, motor agitation, and thought disorder. (Tr. 338.) She noted the following functional limitations as *severe*: ability to understand, remember and follow simple (one or two step) instructions; ability to understand, remember and follow complex (more than two step) instruction; ability to interact appropriately in public contacts, and the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. (Tr. 339.) She noted the following functional limitations as *marked*: ability to exercise judgment and make decisions, ability to relate appropriately to co-workers and supervisors; and ability to care for self, including personal hygiene and appearance, and the following functional limitations as *moderate*: ability to learn new tasks, ability to perform routine tasks, and ability to control physical or motor movements and maintain appropriate behavior. (Tr. 339.)

In 2008, Ms. Shipowick-Smith completed another Psychological/Psychiatric Evaluation in which she noted that Plaintiff's condition is deteriorating in that she cannot remember conversations immediately following the end of a conversation and she has difficulty completing tasks. (Tr. 368.) However, she no longer believed that Plaintiff had any *severe* symptoms, except for her physical complaints. In terms of global illness, she indicated marked, rather than the 2006 severe rating. (Tr. 368.) She also noted that Plaintiff had a *severe* impairment in the ability to understand, remember and follow complex (more than two step) instructions. (Tr. 370.)

In 2009, Ms. Shipowick-Smith completed a Psychological/Psychiatric Evaluation that was similar to the 2008 evaluation, but she no longer had any severe limitations. (Tr. 482-84.) She did not rate the social factors, which would

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11**

1 include the ability to work with co-workers and supervisors and the public.

2 In 2010, Ms. Shipowick-Smith completed a physical evaluation, in which

3 she indicated that due to her bipolar and depression, Plaintiff had marked

4 interference with communicating and understanding or following directions. (Tr.

5 487.)

6 Ms. Shipowick-Smith was Plaintiff's therapist. Ms. Shipowick-Smith

7 believes Plaintiff is unable to work (Tr. 257.) Ms. Shipowick-Smith maintains the

8 physical and emotional abuse Plaintiff suffered at the hands of her family members

9 left permanent emotional damage and physical disabilities (Tr. 451.) She stated the

10 abuse left Plaintiff with unpredictable anger outbursts, extreme anxiety, reactive

11 attachment disorder, social phobia and other anti-social behavior patterns.  (Tr.

12 451.) She did not believe counseling had mitigated the residual effect of her past.

13 (Tr. 451.)

14 The ALJ rejected Ms. Shipowick-Smith's opinion, explaining that her

15 opinions was "completely contrary to the ongoing treatment records, as well as all

16 other *medical* source opinion evidence of record." (Tr. 28.) (emphasis in original).

17 Pursuant to 20 C.F.R. §§ 404.1513(d) and 416.913(d), therapists are

18 considered "other sources," not "acceptable medical sources." *See also* SSR 06-

19 03p.[6] As SSR 06-03p explains:

20 Information from these "other sources" cannot establish the existence
    of a medically determinable impairment. Instead, there must be
21 evidence from an "acceptable medical source" for this purpose.
    However, information from such "other sources" may be based on
22 special knowledge of the individual and may provide insight into the
    severity of the impairment(s) and how it affects the individual's
23 ability to function.

24

_____

25 [6]"Titles II and XVI: Considering Opinions and Other Evidence From Sources

26 Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering

27 Decisions on Disability by Other Governmental and Nongovernmental Agencies,"

28 (April 9, 2006).

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY**
**JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY**
**JUDGMENT ~ 12**

1    The Ruling acknowledges it maybe appropriate to give more weight to the

2    opinion of a medical source who is not an "acceptable medical source" if she has

3    seen the individual more often than the treating sources and has provided better

4    supporting evidence and a better explanation of her opinion. SSR-06-03p.

5    It is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-

6    medical evidence. *See Morgan v. Comm'r Soc. Sec. Admin,* 169 F.3d 595, 599–600

7    (9th Cir. 1999).

8    The ALJ did not commit legal error in rejecting Ms. Shipowick-Smith's

9    opinion, because it conflicted with other medical records that indicated Plaintiff

10   was stable or under control with medication. Moreover, Plaintiff has not attempted

11   to show how Ms. Shipowick-Smith's opinion supports a finding that Plaintiff

12   meets or equals one of the Listings. Indeed, there is nothing in Plaintiff's briefing

13   that refers to any criteria for any specific Listing.

14   In 2007, Dr. Genthe, licensed psychologist, conducted a psychological

15   evaluation to clarify her current level of memory, intellectual and emotional

16   function. (Tr. 303.) He is an "acceptable medical source." *See* SSR 06-03p. He

17   completed a Psychological Assessment Report at the request of the Department of

18   Disability Determination Services (DDDS). (Tr. 303.) Plaintiff reported to Dr.

19   Genthe that the predominate reason for her being presently not employed was due

20   to physical reasons. (Tr. 303.) Based on testing, Dr. Genthe identified that Plaintiff

21   may experience difficulty in holding information to perform a specific task. (Tr.

22   307.) Difficulties with her working memory may make the processing of complex

23   information more time-consuming, drain her mental energies more quickly, and

24   perhaps result in more frequent error on a variety of learning tasks. (Tr. 307.) He

25   also noted that her skill in processing visual material without making errors is

26   below that of her peers. (Tr. 308.) But he concluded that Plaintiff presented with

27   normal mental status, with no significant symptoms of emotional functioning

28   distress or impairment. (Tr. 303-304.)

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13**

1    Also in 2007, Dr. Garfield, DO, examined Plaintiff and did not observe any

2 significant objective findings that would prevent Plaintiff from walking, standing,

3 or sitting for eight hours in an eight-hour day. (Tr. 330.) He limited Plaintiff to not

4 carrying more than 10 pounds frequently and 20 pounds occasionally, with some

5 postural limitations. (Tr. 331.)

6    The ALJ did not err in rejecting Ms. Shipowick-Smith's opinion, and

7 incorporating the opinions of Dr. Martin, Dr. Genthe, Dr. Garfield, and Dr. Beaty

8 into Plaintiff's residual functional capacity. The residual functional capacity

9 incorporates Plaintiff's depressive and anxiety impairments and incorporates

10 Plaintiff's memory struggles by requiring simple routine tasks and the need for

11 written hands-on instruction.

12    Plaintiff accuses Dr. Martin of being unfamiliar with the record.

13 Specifically, she states Dr. Martin "seem unfamiliar with the record of Dr. Rowe

14 as to the diagnosis of Listing 12.08 and borderline personality." ECF No. 17 at 7.

15 Plaintiff's interpretation of Dr. Martin's testimony is not accurate. At the hearing,

16 Dr. Martin explained that she did not consider Dr. Rowe's mention of borderline

17 personality because Dr. Rowe did not make an actual diagnosis. Rather, she

18 interpreted Dr. Rowe's report as indicating that he noted there were some features

19 that would be consistent with borderline personality disorder, but he did not feel

20 he had enough information or evidence to make a full diagnosis. (Tr. 49.) She also

21 did not consider Ms. Shipowick-Smith's finding of oppositional defiant disorder

22 because this diagnoses is normally made in children. (Tr. 49.) Initially, Ms. Martin

23 expressed surprise by the ALJ's reference to borderline personality disorder, but it

24 was not because she was unfamiliar with the record; rather, she did not see a

25 definitive diagnoses in the record and therefore she did not include it in her

26 analysis.

27    Also, the Court notes the one reason the ALJ relied upon for rejecting the

28 Department of Social and Health Services' (DSHS) psychological assessments

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 14**

was because these assessments are "known to be lenient, and are for the primary

purpose of extending state benefits." (Tr. 28.) This is not an appropriate reason for

rejecting the assessments. An ALJ should not base his opinion of medical

evidence on personal experiences or evidence which is not part of the record. *See*

*Reed v. Massanari,* 270 F.3d 838, 843-44 (9th Cir. 2001) (finding it was improper

for the ALJ to reject opinions of doctors based on past experience). Furthermore,

the purpose for which medical reports are obtained does not provide a legitimate

basis for rejecting them. *Lester v. Chater,* 81 F.3d 821, 832 (9th Cir. 1996). Despite

citing this inappropriate reason, the ALJ gave other specific legitimate reasons

supported by substantial evidence which support the ALJ's rejection of Ms.

Shipowick-Smith's opinion and the DSHS's psychological capacity assessments.

*See e.g., Morgan,* 169 F.3d at 601–02. Therefore, the outcome is the same despite

the improper reasoning. Errors that do not affect the ultimate result are harmless.

*See Parra v. Astrue,* 481 F.3d 742, 747 (9th Cir. 2007).

**VIII.  Conclusion**

        Plaintiff has not met her burden of showing the ALJ's decision is not

supported by substantial evidence or that the ALJ committed legal error. The ALJ

did not err in finding Plaintiff's residual functional capacity because it is

supported by substantial evidence. The record demonstrates that Plaintiff's mental

health impairments, namely depression and anxiety, are controlled by medication

and the RFC provides the appropriate limitations that accurately account for

Plaintiff's impairments. As such, substantial evidence supports the ALJ's decision

that Plaintiff is not disabled.

        Accordingly**, IT IS HEREBY ORDERED:**

        1.  Plaintiff's Motion for Summary Judgment, ECF No. 16, is **DENIED**.

        2.  Defendant's Motion for Summary Judgment, ECF No. 19, is

**GRANTED.**

///

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT** ~ 15

1      3.   The decision of the Commissioner denying benefits is affirmed.

2      4.   The District Court Executive is directed to enter judgment in favor of

3   Defendant and against Plaintiff.

4      **IT IS SO ORDERED.** The District Court Executive is hereby directed to

5   file this Order and provide copies to counsel, and **close the file**.

6      **DATED** this 15th day of August, 2013.

7

8                          _s/Robert H. Whaley_

9                         ROBERT H. WHALEY
                        United States District Judge
10

11

12   Q:\RHW\aCIVIL\2011\Swinford (SS)\sj.wpd

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT** ~ 16